I have two factual questions regarding the present status of the case. I noticed it was originally scheduled to be argued, I think, on November 10th, a trial date of November 10th, and I'm wondering if you have any comment on that. What is the present status of the case? There's been two successive changes in status since the briefs were written, and I actually noticed that last night. It has not been tried, is that right? It has not been tried. Is there a trial date? There is no trial date. We had, after the November trial date that we had, that we described in the brief, then we moved the trial date, and it was going to be set, I think, for March 30th, early April. And then recently, within the past, actually, a few days, we had a hearing in the district court, and the district court, due to this interlocutory appeal, has vacated the trial date, and basically has said that... It will be set after we decide this appeal, presumably. Yes, basically waiting on... Now, my related question, has the district court's order that's the subject of this appeal been stayed? No, Your Honor. It's in effect? It's currently in effect, yes. Just out of curiosity to follow up on Judge Friedman's question, the moving of the trial date, was that something that both parties jointly stipulated or accepted? We did. It was a joint motion to stay or vacate the trial date. It seems like someone moving for a preliminary injunction might actually also value an early trial, wouldn't they? I mean, I'm surprised that there would be a stipulation to move the trial date. As far as their intent goes, you'd have to ask them, but you have to look at the situation. This was a preliminary injunction that was requested three years into the case. And so, like I said, you'll have to ask them about the question of their intent and purpose. But it was stipulated, too. It wasn't something that they opposed. No, it was a joint request to vacate the trial date, and that joint request was granted, and in the hearing, we can supplement the record once the transcript comes out. But basically, the court is waiting on, if this court is going to review the claim construction, we're, we don't, let's put it this way, from my perspective, from my client's perspective, we believe that the claim construction is erroneous. And the last thing we want to do is go to trial on the claim construction the way it is. So, and I guess we're going to get to that. The question is whether or not this court is going to review the claim construction. So your argument would be that we should or should not review the claim construction? Absolutely should review the claim construction. I would sit on my knees and beg you to, because I don't want to go to trial. But ordinarily, a claim construction is not reviewable. I'm sorry, Your Honor? Ordinarily, a claim construction is not directly reviewable. If what you have is a claim construction, an order construing the claims, that's not ordinarily reviewable directly. Not ordinarily reviewable, Your Honor, but once we get beyond the jurisdictional issues, if this court determines that it has jurisdiction to review the injunction order, then the underlying rulings are reviewable. But are they reviewable? And I say that because suppose that I were willing to accept your argument that there was, in fact, that a portion of this order appears to be injunctive in nature. Yes. That the portion in particular would be number three, right? The part that says you have to inform your customers not to screw in the lock screws. Yes, and there's a precursor to that as well. If I were to accept that a portion of this appears to be injunctive, but I also have to accept the district court's representation in his opinion that he was not issuing an injunction because he believed that there were too many factual issues. He was not rendering a determination on likelihood of success on the merits. It just seems to me that he didn't address any dispositive type issues or even hint at them, even in the context of a preliminary injunction. So why would I reach the claim construction? He did not frame this case such that we would reach the claim construction. Well, for several reasons, a number of reasons. The global issue is to not waste judicial resources because if you don't, first let me ask the question of what happens if you don't? And then the question would be why would you? And one reason that you would is, I'll get to why you could next, but why you would would be to not waste judicial resources. Don't send this back down if it's wrong. But wouldn't you be wasting our resources, sir? I think... Just one second. Go ahead, I'm sorry. Because claim construction, until there is a dispositive type of motion, you parties would love, if we were willing, to have us construe every word, word by word, in every claim. And the point of not generally having interlocutory appeal on this is we wait to see exactly what precise terms are dispositive in the case so that we limit ourselves and not issue advisory opinions. So why don't you respond to that? Absolutely, and I agree with you 100%. There is a balance between 28 U.S.C. 1291, you only want to review final orders, and 1292A1, where you do have authority, we have a statutory right, actually, to appeal interlocutory orders granting injunctions. But in this case, you look at what was... First of all, the characterization by the district court of what the order was really isn't controlling. It's what was the order. And once you find that it was injunctive relief granted, then you look at what was the basis for that. I understand the court did say it didn't want to grant an injunction and it found there was no irreparable harm. And a lot of the normal underlying things that a court looks at to grant an injunction. But what the court did find, if you look prior to that paragraph 3 where the actual relief is granted that we assert is injunctive, look back and see what it's based upon. And that's the underlying rulings that gets to the claim construction that we think you can, should, and should review. You claim the entire order, all paragraphs of it, not just paragraph 3, is an injunction, a preliminary injunction? I think it would be favorable to my client to answer yes and say it all is. But I would say no. I think the vast majority of it is really a discovery. Doesn't that present the question, which the parties have not addressed, whether if part of an order could be characterized as a preliminary injunction, but other parts could not be, do we have a jurisdiction one to review it at all? And if we do, can we review the whole order or just the parts of it that constitute an injunction? I take that in two steps. The first question is yes. We have a statutory right and you have statutory jurisdiction under 1292A1 to review an order that grants an injunction, whether it's part of the order, all of the order. I think a lot of injunctions that are granted that this court reviews have some ancillary issues in them as well. And this is one of those cases. Then the question comes, what then comes up into the appeal to review? But this case comes up in such a peculiar posture because the district court began by saying, I'm not going to issue a preliminary injunction. And then he went on and said, but I'm going to issue an order dealing with accounting practices. Yes, and then went a step further. And it seems to me that isn't quite like a case where the court says this is a preliminary injunction. In addition, I'm going to put in here a couple of provisions relating to discovery. The question is how you characterize this order in the light of what the district court said and did. And I believe the way to intellectually approach that is to distinguish the different aspects of the order. And I'm not here to assert that the court should or maybe even I'm not asserting that there's maybe not even statutory authority in jurisdiction to review some parts of this order. Do we have line item veto power? I think so, yes. Are we allowed to say we vacate number three? I think so. I can't cite you a case on that, but that's my feeling and understanding. With respect to paragraph three of the order, why is that anything more than the district court's recording what you agreed during the course of the hearing, the preliminary injunction hearing? Because in the hearing what we did was something more akin to what went on in the cross-medical case where there was a voluntary withdrawal of a product from the market. That was a different case because the injunction in that case was explicitly set forth as an injunction, whereas this order, if anything, explicitly says it's not. And secondly, in that case, even though the accused products were pulled off the market, there was no assurance that they wouldn't be put back on the market. But here it seemed to be any fair reading of the colloquy that occurred in the preliminary injunction hearing suggests that you were in agreement to working up a plan to notify customers. I think if you look at the colloquy in its context and then also look at the written objections that we asserted, there was no consent to an injunction. There are things we were doing voluntarily. No consent to an injunction, but it seemed to me that you agreed to putting in place some sort of a plan to notify customers. We agreed that we would voluntarily put in place some sort of plan, but what was proposed and what ended up, the exact language that ended up in this order, we specifically objected to in writing. And we actually asserted that if this was granted, if their proposed language was granted, that it would be an injunction in the distinction. Did you agree to tell your customers not to screw in the lock screws? We agreed that we would put in some place some kind of notification plan, and we actually, prior to the injunction being granted, did voluntarily begin a notification process. But that is much different. The notification process being telling them not to screw in the lock screws. I just want to make sure I understand the substance. Are you disputing, are you suggesting that you never agreed that you would tell your customers not to screw in the lock screws? I'm trying to appreciate exactly what your argument is. There is a distinction in the language, but I don't think it's controlling as far as jurisdiction goes, because the key is we do the installation. So it's not really a question of what we instruct the customers, what they are to do. We do the installations. These mandrels slide into a tubing head back in my client's facilities, and before they changed the running procedures, they would run in the lock screws. The procedures we changed, and so we don't run them in. So the product, the question of whether lock screws are run in or not, has already been decided when we go out and install them at the wellhead. The installation at the wellhead is basically to take this mandrel that's already been stabbed in a tubing spool, take it out, and place it, install it on top of the casing head. There's no running in the lock screws out in the field. That's not the way the process works. So before this notification process began, we changed our procedures to where we didn't do it. Everything was kind of internal. We took the additional step voluntarily to then say that it's really a distinction in language that really doesn't make that much difference, I don't think, because we put plates that say whether or not to be run in. You're into your rebuttal time. Do you want to reserve your time? I believe I've got two and a half minutes left, and I think I'll keep running through it if there's more questions. Then you'll have no rebuttal. That's up to you. Leave me one minute. I'd like to leave one minute left then, just in case. I have a question. Yes, sir. Are you making, drawing the basic distinction between doing something voluntarily and being ordered to do something? Absolutely, and that is what we put in our specific objections. There is a huge difference between us voluntarily doing something, like if we were to voluntarily withdraw something from the market, or being mandated to because the mandate is an injunction. It takes away our option to change our mind, change our procedures, and that freedom to operate is taken away. It's taken away by an injunction, an injunction that's enforceable by contempt. That makes an injunction. That's our statutory right. And then once we have the statutory right and this court has jurisdiction, what you look at is the portions of the orders that underlie it. In the claim construction, if you look at A2, page 2 of the order, lines 23 to 28, that is the underlying basis for the injunctive relief. But there's nothing in this order that states anything about claim construction. It's the underlying basis. And if you look at page 2, there is the court saying, Cameron should start following procedure practices that assure that the lock screws are not engaged and there's no installation or use that's going to be in an infringing way. So the court's saying there's at least a substantial likelihood of success that running in the lock screws is infringing, and that's why I'm going to instruct you to notify your customers. That can be revealed. There's a substantial likelihood of success on the merits in this order, did it? It didn't use the catchphrase, but it didn't use that mantra. But it found, on this page 2, it found that running in the lock screws, at least it's likely that, that it'd be infringing. And that leads us to why did the court do that? It's the claim construction. And I respectfully request that this court correct the claim construction. Thank you, Your Honor. We'll save you a minute, Mr. Rogers. Now we'll hear from Mr. Whitelaw. Good morning. May it please the court. I think we need to put the scope of this order further into context so the court understands how far attenuated Markman and even pending motions for summary judgment are with respect to what the scope of review is. This whole idea of torquing in lower lock screws stems from Cameron's attempts to design around the 925 patent. There were serious iterations of design modifications, including the new style, which you've read about in the briefs, the old style, which existed at the time of the filing, and the original design, which is no grooves in the crack magnet. Did you all tell the court that if lock screws were not screwed in, there wouldn't be infringement? Exactly, Your Honor. And that is precisely what they're trying to establish factually. No, but you all told the court that if lock screws are screwed in, there would be no infringement. That is true. There would be no dual load path, which is within Claim 1 of the 925 patent. I assume that means you don't even think there's DOE, right? Because you've just given that up. You've just taken away your ability to say there's a doctrine of equivalence if the lock screws are screwed in. You're stipulating to no infringement. We stipulated to no infringement when lower lock screws are not engaged because you need the dual load path because that is the essence of Claim 1 of the 925 patent. And that's what they've been trying to achieve is kind of a King's X type argument. We don't engage the lower lock screws, therefore there's no infringement. Doon agrees. We win. We're done. And that's what they're trying to establish through this factual discovery plan that they've instituted and they've introduced. You say this is not a preliminary injunction, this order, right? What is it? It's a discovery order, as Mr. Rogers agrees. A discovery order? It's a discovery order. Not paragraph 3. That has nothing to do with discovery. That seems to me the critical issue that they're talking about. Well, what we get down to at this point is the scope of review. What is the proper instructions that should be given to the customers? Is that part of discovery? Is there a dispute that they want to get some information from you on what instructions you're giving to your customers? This paragraph 3 explicitly says you ought to tell your customers certain things when you install it or before they operate it. Your Honor, in terms of being a discovery order, it's really a preservation of evidence order. Preservation of what, I'm sorry? Evidence. Well, that's certainly paragraph 2, maybe other paragraphs, but not paragraph 3. Paragraph 3 has nothing to do with evidence. It simply says that Cameron will provide instructions which unambiguously state so-and-so, so-and-so. What does that have to do with discovery? Because, as Mr. Rogers pointed out, Cameron represented to the court that it does all the installations of the frack vendors and that the fracking companies come in and then do the frack job at the site. They say that customers aren't involved with the installations. Customers don't get involved. And to solidify that point, Cameron itself suggested, well, let's notify our customers that we're not tying these up. Yes, but there's also a statement, as I remember, at the bottom of the page in which they said we object, in the colloquy, we object to an injunction but will let us continue doing what we want. That seems to me wholly inconsistent with your claim that they agreed to it. That's correct, Your Honor. But it's a form of a substance argument. It behooves them to make sure that their customers, and this includes fracking companies and any other third parties that are on site, not to tie in those lock screws so they can establish. No, no, that's not true. They can invalidate your patent and then their customers can screw or not screw in those lock screws at their choice. And obviously you think screwing in the lock screws is valuable. You've got a patent on it. So maybe they'd like to screw in the lock screws, too, and maybe their customers would like to screw in the lock screws. And so if they were successfully to invalidate your patent, you are absolutely taking away from them a right to do something valuable. I mean, you can't say screwing in the lock screws is not valuable, right? That's the source of the patent. We agree with that, Your Honor. So the court has taken away their right to sell to their customers a product to be used in a manner that's more valuable. How is that not an injunction? It has the practical effect of an injunction, Your Honor, and we don't disagree with that. But to get to this court to establish jurisdiction over this appeal of this order, they have to show reputable harm, and that's the Carson case. The Carson case established that. What do you mean they have to show? If this is a preliminary injunction, then we have jurisdiction to review it. Is that right? In the Paradigm case, Your Honor, you would have jurisdiction, correct? But this is not a preliminary injunction. The preliminary injunction, as the court pointed out, was expressly denied, and the court went through the factors that would give rise to a preliminary injunction. Let me ask you, as I understand, we were told that this order has not been stated as in effect. Suppose it were established that Cameron had failed to comply totally with Paragraph 3. Could they be held in contempt? Technically, they could, Your Honor. Pardon? Yes, they could. Held in contempt. Yes. But you ordinarily can't hold someone in contempt, ordinarily people are not held in contempt for violating a discovery order. Again, Your Honor, There are other sanctions that are applied. I've never seen a case where someone was held in contempt because they failed to comply with a discovery order. That is correct. But as you mentioned earlier, this is a peculiar set of facts. This is an abided order. This is an order that Cameron was really looking for to establish evidence at trial that they don't torque and use lower lock screws, and therefore there can't be any dual load path, therefore no infringement. To the extent they can establish that at trial, they went Do you say that basically Paragraph 3 should merely be viewed as an order requiring the maintenance of evidence? Yes, Your Honor. It has nothing to do with the rest of the case. That doesn't seem to me that it reads like that, particularly when you compare it with Paragraph 2, which explicitly states that, for certain things, Cameron will maintain accounting records for the following. When you read Paragraph 3, it has nothing to do with accounting records. It tells them that they have to tell their customers not to tighten these thumbscrews when they're using the equipment. That's correct, Your Honor. This order follows the discussions that were had during the oral arguments at the preliminary injunction motion. After the court said it was denying it, it moved to discovery matters, and this follows on Cameron's offer to enter it into this notification plan. And so the order follows that. Well, do you think every time someone volunteers to do something, that authorizes a court to order them to do something? You know, it's one thing if I say, I think I'm leaving Washington and I'm going to go to Chicago to go to work in Chicago. That's one thing. It's quite different, it seems to me, if I'm sitting here and suddenly the government comes in and says, effective the first of next month you're going to be working in Chicago, and order me to go to work in Chicago. It seems to me there is a fundamental difference between someone doing something voluntarily and someone doing something in compliance with a court order. I agree with you, Your Honor. I mean, the court has isolated the issue here. It's the scope of review of that line of the discovery order, the preservation order that's before us. We believe it has no effect in terms of irreparable harm to Cameron. In fact, we believe it helps Cameron. It's something that Cameron wanted. Well, they don't seem to agree with that. Do you think we have line item veto authority? I mean, what do we do if we think that constitutes an injunction? What do we do? We believe this court does have jurisdiction over a line item veto, Your Honor, because that's basically the only part of the order that amounts to arguably a practical injunction. And to the extent that the court has jurisdiction over this matter pursuant to Carson, which we don't believe it does, for that matter there is no jurisdiction, but if there were, we would agree that the veto power online veto power would exist. Does that mean you think we have jurisdiction only over the issue of paragraph 3, or that we have that jurisdiction gives us jurisdiction over any issue that's present in the case? Well, that's a two-part question. I would say no to both questions, Your Honor. First and foremost, we don't believe there's any jurisdiction because we fall into that latter category where there's no express injunction in the case. We are now into the interlocutory appeals dealing with having the practical effect of an injunction. And for that matter, you have to show irreparable harm. Carson lays that out, and there's a reason for it. Let's assume we decide that paragraph 3 does meet prong 2 of the Carson test, irreparable harm. What does that mean? Well, then you're back to if there is jurisdiction. Do we have jurisdiction and we can address paragraph 3? Does that mean we have jurisdiction to address anything else that's at issue? Well, the court in the Cross Medical case, and again in a case cited by Cameron in its reply brief, the Bernard case, say no. What the court can review are matters only inextricably bound by the matters involved in the injunction. But Cross Medical concluded that there was an explicit injunction that wasn't governed by Carson, so I don't think that provides any guidance here. Well, in Cross Medical, the court did address the issue and stated that section 1292 does allow court to review other orders that are inseparably or very closely connected with the merits of the injunctive order. That's under 1292, but that's not under the situation outlined in Carson where you don't have an explicit injunction, and instead you have something that is akin to an injunction. That provides a different basis of jurisdiction. So are you suggesting you don't want us to reach claim construction? Absolutely, Your Honor. Why not? Wouldn't it behoove you to have us give a claim construction on these issues to streamline your procedures to us? Well, number one, we talk about judicial resources. I think it would be an immense burden on the court to be reviewing Markman rulings before we've gone to final judgment, before the court's ruled on the motion. But you're already here. If you think I haven't read the claims already, how much more work is it for me at this point? It saves the district court a lot, especially if I think he's wrong. Again, Your Honor, based on case precedent, we don't believe that it's within the scope of the review, assuming there even is jurisdiction on this limited order on discovery issues. Well, you'd say assume there's jurisdiction, but the real question is, assume there's jurisdiction for us to do what? Now, even if we have some jurisdiction, do we have jurisdiction to determine whether there's anything wrong with paragraph 4 on the photograph installations? Now, that seems to be, looks like kind of a discovery order to me. Tell them they should allow them to photograph these things, presumably so they can offer those photographs at trial, I assume. And that's precisely why we're here, Your Honor. We have taken photographs, we have conducted inspections, and we have found that the lower lock screws are being engaged, notwithstanding changes to the running procedures manual, notwithstanding their internal memoranda, and notwithstanding their notices to their customers. And this is the issue at trial. To the extent they cannot show that, then we've established infringement. I'm a little bit confused. I thought your argument with respect to paragraph 3 was essentially that the second prong of Parson is not met because this paragraph recites nothing more than what was in effect agreed to or stipulated at the hearing on the preliminary injunction. But yet you opened your discussion with a comment that, no, this is nothing more than a discovery order. So what is your position, that paragraph 3 reflects nothing more than what was already stipulated or agreed to and therefore is not coercive and therefore cannot meet step 2, prong 2 of Carson, or is it that it's just a discovery order like everything else in this order? We use the word discovery order more of a preservation order. That is correct, but your former statement is our position, always has been our position, Your Honor, that there's no jurisdiction because there is no reputable harm by virtue of this order, the provision in the order that they're appealing. That's the second prong of Carson. Because they've already agreed to it and this is nothing more than recording what was agreed to. Yes. Yes, Your Honor. Well, of course, if that's all it was, one would think, and if that's all the court had attended, one would think, instead of phrased in terms of Cameron will do certain things, it would merely recite that at the hearing Cameron agreed to do certain things. If there was no bite behind this order, merely reporting what was happening, one wouldn't think they would be told to provide instructions to customers which unambiguously state it's drafted in a way that it seems to me is telling these people, now I'm ordering you to do this, and if you don't do this, you're going to be in serious trouble. You're correct, Your Honor. It does have the practical effect of an injunction. Well, it's more than a practical effect, isn't it? Isn't it really a mandatory injunction? It's an ancillary injunction. It's something that really was not part of the preliminary injunction motion. The preliminary injunction motion we sought to enjoin Cameron from manufacturing, using, offering for sale, or selling all their frack vandals. That's not what we got, and that's why we're outside the context of an express injunction. Wait, so what if you go to a court and you say, I want them to have to stop using, selling, everything under the sun, and the court says, no, no, I'm going to give you something less than that, it's now, but I'm still going to make them stop using, selling something, that's suddenly not an injunction because you didn't get everything you asked for? Well, I don't think we got anything we asked for in the preliminary injunction, Your Honor. You didn't ask to have their customers not screw the lock screws in? That became part of the ancillary discussions during the hearing, Your Honor. That was not part of our motion. We never stated we would irreparably harm if they did not send notifications to their customers telling them not to tie in lock screws. Again, this is something that Cameron invited, because it behooves them to establish that at trial through establishing a non-infringing, agreed-upon position, which is no dual-load path. All right. Thank you very much, Mr. Whitelaw. Thank you, Your Honor. Mr. Rodgers, you have one minute. Just one final point, Your Honor. I appreciate your time today. Is there any irreparable harm to you? We didn't put that in our brief, and we don't think that's the standard. Because you don't think this is a Carson case, a practical effect case? You think it's a straightforward injunction? Correct. Correct. If we conclude it is a Carson case, do you have any evidence of irreparable harm? No. I mean, you can make your own decision on it, but we're not asserting that. We don't generally make fact findings in the first instance. But go ahead. Use your 29 seconds. I believe you have some discretion here, and I implore you to exercise it. And there is a question of judicial resources. If you find that there's jurisdiction here, and if you find that you've got this line-item veto power. How is the claim construction stuff intertwined with the permanent injunction? Because it underlies the portion of the order that's the injunctive relief. The reason why the court issued the orders to us is because the court found that there's no mantra used about substantial likelihood of success, but there's a reference to the lock screws being an infringing way. Do you agree that if the lock screws are not screwed in, you don't infringe? Your client's off the hook? Do you agree with just that basic principle? I'm not saying do you agree with every claim construction issue. Do you agree that if your customers don't screw those lock screws in, if you all don't screw them in, there is definitely no infringement, at a minimum? That's a huge problem for me because— You don't agree with that? Do you think your customers do infringe even if the lock screws aren't screwed in? It depends upon what the claim construction is, and that's the heart of the problem here. That's why I'm imploring you to look at the claim construction. I want a yes or no. Sorry, counsel. But does your client infringe? Suppose I decide they infringe on every other element. Do they infringe if the lock screws are not screwed in? Not under the current claim construction that requires a dual load path. Absolutely not. No infringement. I think what Judge Moore is asking is what is your position on infringement with respect to those lock screws? Not with respect to what the claim construction—what is your position? It's always a conditional answer because it's based upon what the claim construction is. We believe that the claim is indefinite, so it can't be construed. But there's different claim constructions. There's about seven different alternatives, and infringement depends upon what that is. And I don't believe any of those seven alternatives to claim construction are correct. I believe it's indefinite. So it's an invalid claim that's never infringed. You're never going to give me an infringement position because you believe the claim is indefinite? I will give you an individual infringement answer for each different alternative claim construction. And so under the current claim construction, absolutely no infringement. But that's the problem. I don't want to be back here again if we go to trial on the current claim construction, and then we come back here again, and we may have been doing all these notification procedures for nothing. That seems to me like an argument that can be made in almost any case where review is sort of an interlocutory order. You know, the judge says, I'm not going to allow this substance such as evidence in. And you come up and say, well, if that evidence doesn't come in, I don't think we can win the case, and therefore we're going to have to come back later on and argue that the evidence should have been admitted. Therefore, it's appropriate at this early stage of the case for you to tell the judge that he should allow that evidence in. I mean, that's overturned and overruled by the strong policy against piecemeal appeals. And there's a huge distinction in this case in that this is not the traditional preliminary injunction case at the outset of the case with preliminary claim constructions. This is three, four years into the case with a set claim construction. You have a written Markman ruling to review, and so it's much different than the traditional case. I don't think a ruling in this case, the way I'm asking for, is going to open the floodgates of interlocutory appeals of immature cases. I don't support that. But this is a very mature case. Everything's here for you. And the final point I'd like to make is, if you get to the point, if you get to the point you're reviewing claim construction, look at what I'm having to go back down to trial on, a dual load path claim construction, and then look at column seven of the patent, lines 33 to 37, and that is a description of the single load path. I think that's fine, Mr. Rather. That goes a little bit beyond the opposing counsel's argument. And one just side question before you sit down. What is the function of these lower set screws since apparently they can be left unscrewed? There's no function in the accused products because the upper connection is strong enough to hold the product in place. That's why we were voluntarily doing, you know, not running in the lock screws ourselves. In the accused products, I mean, that's the accused products. In the patent, what the patent describes, the function of the lock screws is a retention mechanism. But in the systems that you're installing for your clients, what is the function? Oh, yes, okay, and I understand that's something that it took me a while to figure out. They're left, you know, backed out. Yes, there's a reason. There's a big reason why we don't just pull these things out and make these products without tubing head lock screws at all. And the reason why is it's a multi-part process. During the frack process, the tubing head lock screws and the accused products have no purpose at all. But they have to be there because after you frack the well and you're moving to the production stage, you pull the frack mineral out, and then the well goes to its lifetime of the well, the long-term lifetime of the well of this producing gas. The entire string of casing is hanging. So the lock screws have a function in the normal operation of the well. They engage what's called a casing hanger that hangs the entire string down in the well. So they have a huge purpose we can't do without them. Thank you very much. Thank both counsel. The case is submitted. Thank you. Next argument is in Appeal Number 2009-5084, Hoopa Valley Tribe v. The United States.